

ORIGINAL

Of Counsel:
DAVIS LEVIN LIVINGSTON

MARK S. DAVIS            1442-0
MICHAEL K. LIVINGSTON   4161-0
LORETTA A. SHEEHAN      4160-0
ERIN C. DAVIS           9292-0
851 Fort Street, Suite 400
Honolulu, Hawaii 96813
Telephone:  (808) 524-7500
Fax:        (808) 356-0418
Email:      mdavis@davislevin.com
Email:      mlivingston@davislevin.com

Attorneys for Plaintiffs

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 06 2012

at ___ o'clock and ___ min. ___ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| **LAURA M. WHITNEY and RICHARD WHITNEY**, Individually and as Next Friends of Their Minor Sons **EVAN WHITNEY** and **NOAH WHITNEY**,<br><br>    PLAINTIFFS,<br><br>    VS.<br><br>**UNITED STATES OF AMERICA**,<br><br>    DEFENDANT. | **CV12  00382 HG  RLP**<br>CIVIL NO.<br>(FEDERAL TORT CLAIMS ACT)<br><br><br>**COMPLAINT AND SUMMONS TO ANSWER COMPLAINT** |

## COMPLAINT

COME NOW Plaintiffs above named, by and through their attorneys, DAVIS LEVIN LIVINGSTON, and for a cause of action against the United States of America, allege and aver as follows:

## INTRODUCTION

1.     This Complaint is filed pursuant to the provisions of the Federal Tort Claims Act, Title 28, United States Code §§ 1346(b), 2671, *et seq.*, against the United States of America ("Defendant") for the catastrophic brain injury sustained by Noah Whitney, a minor, and for the injuries sustained by Noah's mother, Laura Whitney, during the course of Noah's delivery at Tripler Army Medical Center ("Tripler") on the night of September 7-8, 2010, and for the related injuries suffered by Noah's minor brother, Evan Whitney, and Noah's father, Richard Whitney.

## JURISDICTION AND VENUE

2.     The physicians, nurses and staff who breached the applicable standards of care, as hereinafter alleged, were at all relevant times acting within the course and scope of their employment with Defendant United States of America.

3.     This court has jurisdiction with respect to this lawsuit under the Federal Tort Claims Act, 28 USC §§ 1346(b), 2671, *et seq.*

4.     Plaintiffs were citizens of the State of Hawaii at the time of the Defendant's negligence, but currently reside within the State of Virginia. The injuries

suffered by the Plaintiffs occurred in the City and County of Honolulu, State of Hawaii. Venue is proper in the Federal District Court for the District of Hawaii.

5.     Pursuant to the provisions of the Federal Tort Claims Act, 28 USC §§ 2871, *et seq*., Plaintiffs filed administrative claims on July 7, 2011 for personal injury against the United States of America within the statutory period as required by law. The United States of America acknowledged receipt of the Federal Tort Claims Act claims forms on August 4, 2011.

6.     More than six months have elapsed since the filing of Plaintiffs' administrative claim forms. As of the date of the filing of this Complaint, Defendant United States has not taken final administrative action on the Plaintiffs' claims and, therefore, Plaintiffs have duly exhausted all administrative procedures and the Complaint is timely filed.

7.     Plaintiff Laura Whitney, mother of minor Plaintiffs Noah Whitney and Evan Whitney and spouse of Plaintiff Richard Whitney, is an individual who resided within the State of Hawaii at the time of the negligence of Defendant.  Plaintiff Laura Whitney brings this suit in her individual capacity and as Next Friend of Noah Whitney, a minor, and Evan Whitney, a minor.

8.     Plaintiff Richard Whitney, father of minor Plaintiffs Noah Whitney and Evan Whitney, and spouse of Plaintiff Laura Whitney, is an individual who resided within the State of Hawaii at the time of the negligence of Defendant.  Plaintiff

Richard Whitney brings this suit in his individual capacity and as Next Friend of

Noah Whitney, a minor, and Evan Whitney, a minor.

9.     Plaintiff Noah Whitney is the minor son of Plaintiffs Laura and Richard

Whitney. Plaintiff Noah Whitney resided within the State of Hawaii at the time of the

negligence of Defendant.

10.     Plaintiff Evan Whitney is the minor son of Plaintiffs Laura and Richard

Whitney. Plaintiff Evan Whitney resided within the State of Hawaii at the time of the

negligence of Defendant.

## FACTUAL ALLEGATIONS

11.     The Plaintiffs hereby incorporate by reference the allegations contained

in paragraphs 1 through 10, above, as is fully set forth herein.

12.     Laura Whitney was 37 years old when she presented to Tripler Army

Medical Center ("Tripler") on September 7, 2010, at approximately 10:15 pm, after

experiencing severe lower abdominal pain at home.  She was estimated to be 35

weeks and 4 days along in her pregnancy.  Mrs. Whitney was scheduled for a C-

section on September 10, 2010, at 36 weeks gestation due to her past obstetrical

history.

13.     Laura Whitney's obstetrical history included five pregnancies before her

pregnancy with Noah.  She had two early miscarriages at five and ten weeks and two

4

mid-trimester miscarriages at 22 weeks (2007) and at 20 weeks (2008). Evan Whitney was born November 9, 2009.

14.    Evan Whitney was delivered by emergency C-section at 24.5 weeks gestation through a low vertical incision, necessitated after Mrs. Whitney was noted to be dilating through a McDonald cerclage that had been placed to address cervical incompetence.

15.    Because a vertical incision had been used to deliver Evan Whitney by C-section, Mrs. Whitney was at risk for uterine rupture in connection with future pregnancies, including her pregnancy with Noah.

16.    Mrs. Whitney became pregnant with Noah in January of 2010.

17.    Because of her history of a failed conventional transvaginal cerclage, Laura Whitney had a transabdominal cerclage placed on March 29, 2010. This procedure was performed by Maternal Fetal Medicine specialist Dr. Julian Parer, in San Francisco.

18.    Because Laura Whitney was known to be at risk for uterine rupture and other complications based on her obstetrical history, she was scheduled to undergo a repeat C-section at 36 weeks gestation, on September 10, 2010.

19.    Laura Whitney's pregnancy with Noah was carefully monitored and was progressing normally and without complications, both before and after the abdominal

cerclage placement.  Obstetrical management included weekly obstetrical visits, cervical checks, frequent ultrasounds, steroids, and weekly progesterone injections.

20.     On the night of September 7, 2010, Mrs. Whitney began experiencing severe, sharp abdominal pain at about 9:45 p.m. Mr. and Mrs. Whitney rushed to Tripler, arriving at the Labor and Delivery ("L&D") unit at approximately 10:15 pm.

21.     Upon arrival at the Tripler L&D unit, Mrs. Whitney immediately informed the medical and nursing staff of the pain she had experienced at home.  She also explained her obstetrical history including the placement of the abdominal cerclage, and the planned C-section September 10, 2010, only 3 days later. She also requested that the obstetrician who had been following her pregnancy be notified and consulted.

22.     External fetal monitoring was started in a triage room at 10:57 p.m. on September 7, 2010, and continued until 11:28 p.m., lasting a total of 31 minutes. The fetal monitoring during this 31 minute period was interpreted as reassuring.  Mrs. Whitney's heart rate during the 31 minutes of monitoring was tachycardic.

23.     Mrs. Whitney reported that her severe abdominal pain was still present after monitoring was discontinued at 11:28 p.m..

24.     After fetal monitoring was discontinued at 11:28 p.m., Mrs. Whitney was instructed to walk to an examination room where a sterile speculum vaginal

examination was performed by Dr. Kimberly Hooverston. Fetal monitoring was not conducted during the vaginal exam.

25.     According to Dr. Hooverston's late entry progress note, the vaginal examination showed "mucous like bleeding" with a closed cervix.  Dr. Hooverston also documented that a nurse palpated Mrs. Whitney's abdomen during the exam and felt a "firming of the uterus," which was thought to be a contraction.

26.     After the vaginal examination by Dr. Hooverston was completed, Mrs. Whitney was instructed to walk back to the triage room. Once back in triage, Mrs. Whitney reported that she was experiencing worsening pain and was feeling hot, and was exhibiting signs and symptoms of extreme distress.

27.     Mrs. Whitney's medical providers attempted to resume fetal monitoring at 11:49 p.m., twenty-one minutes after it was initially discontinued, but they were unable to obtain a continuous, distinct and reliable fetal heart rate despite numerous attempts.

28.     A uterine activity transducer was placed shortly after 11:52 p.m. and stayed in place until 12:12 a.m., on September 8, 2010.

29.     At about 11:56 p.m., Mrs. Whitney's providers became aware that she was experiencing increased tachycardia, with a heart rate ranging from 115-120 beats per minute.

30.     Finally, at approximately 12:12 a.m., Mrs. Whitney's medical providers discerned the fetal heart tones and determined that the fetal heart rate was dangerously bradycardic, ranging from 50 to 70 beats per minute ("bpm").

31.     As soon as Mrs. Whitney's medical providers determined that the fetal heart rate was severely bradycardic, at 12:12 a.m., they concluded that a uterine rupture was likely and made the decision to perform an emergency C-section.

32.     Mrs. Whitney's medical providers failed to notify or consult the obstetrician who had been managing Mrs. Whitney's pregnancy prior to Noah's delivery by emergency C-section.

33.     The nurse or nurses caring for Mrs. Whitney on the night of September 7-8, 2010, did not document a nursing admission assessment prior to the C-Section, did not document Mrs. Whitney's pain level on arrival to L&D or after the speculum exam, did not document findings of "firming of the uterus" in the exam room, and did not document a progress note until 3:00 a.m., on September 8, 2010.

34.     The fetal monitoring strips provided the only "real time" documentation prior to the emergency C-Section.

35.     Mrs. Whitney was moved to the operating room at 12:12 a.m., and anesthesia was started at 12:20 a.m.  The surgical incision was made at 12:26 a.m., and Noah was delivered by emergency C-section at 12:29 a.m.

36.     Upon entering Mrs. Whitney's abdomen, a large uterine rupture was noted at the area of the prior vertical scar.  The amniotic sac was intact, and was ruptured by the surgeon.

37.     Noah Whitney was severely depressed and acidotic at birth.

38.     The operative report states that a large amount of blood was noted upon entry into Mrs. Whitney's abdomen, with total blood loss recorded to be 2400 cc, or approximately half of Mrs. Whitney's total blood volume.  Multiple blood transfusions were given to Mrs. Whitney.

39.     Noah was handed off to pediatricians after delivery.  His condition at birth was cyanotic, limp and apneic.

40.     Noah Whitney's birth weight was 3020 grams (6 pounds, 10.3 ounces).

41.     Noah Whitney's Apgar scores were as follows:

- 2 @ 1 minute
- 3 @ 5 minutes
- 4 @ 10 minutes
- 6 @ 15 minutes
- 7 @ 20 minutes

42.     Umbilical Cord Blood Gases were drawn at 12:56 a.m.  Results were consistent with profound metabolic acidosis and were reported as follows:

- Venous: Ph: 6.7, PO2: 15, CO2: >100
- Arterial: Ph: 6.59, PO2: 17 CO2: > 130

43.     Noah required CPAP, PPV and intubation after birth and was admitted to the Neonatal Intensive Care Unit ("NICU") at Tripler. Umbilical arterial and venous lines were placed. The first arterial blood gas was drawn at 2:04 a.m.  Results were as follows:  Ph: 7.18, PO2: 191, PCO2: 26, HCO3: 10, BE: -19.

44.     On admission to NICU, Noah Whitney demonstrated neurological signs consistent with Hypoxic Ischemic Encephalopathy ("HIE"), hyper-reflexia, increased tone, and chin tremors.  He was assessed and treated by the Pediatric Neurologist Dr. Pederson, who confirmed the diagnosis of HIE.

45.     On his first day life, Noah Whitney exhibited "seizure like" activity.

46.     On September 9, 2010 (day two of life), Noah Whitney had an EEG which showed "burst like suppression patterns consistent with HIE."  He was treated with phenobarbital for seizures for one week.

47.     Noah Whitney was discharged from the NICU at Tripler on September 27, 2010, and continued to require treatment as an outpatient at the pediatric clinic at Tripler as well as with the Pediatric Neurology team. He soon began demonstrating signs of spastic cerebral palsy.

48.     The Whitney family relocated to Virginia in July of 2011, and established care for Noah Whitney at the Naval Medical Center in Portsmouth, Virginia, where he was assessed by the Pediatric Neurology group at the hospital.

49.     Noah Whitney has been diagnosed with dystonic cerebral palsy, with global developmental delays.

50.     Noah Whitney continues to require intensive physical and occupational therapy as well as ongoing pediatric and neurological care.

## FIRST CLAIM FOR RELIEF
## MEDICAL NEGLIGENCE

51.     The Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 50, above, as if fully set forth herein.

52.     At all times relevant hereto, Defendant Tripler Army Medical Center, as a collective entity and/or through its actual and/or apparent employees and/or agents, each owed a duty to Plaintiffs to exercise that degree of care, skill and diligence ordinarily exercised by such health care providers in similar circumstances.

53.     Defendant Tripler Army Medical Center, as a collective entity and/or through its actual and/or apparent employees and/or agents, breached the aforesaid duties of care owed to Plaintiffs by failing properly to manage Laura Whitney's labor and delivery.  These breaches of the applicable standards of care include, but are not limited to the following:

    a)    A failure promptly to notify and consult the obstetrician who had been managing Mrs. Whitney's pregnancy after Mrs. Whitney presented at L&D on September 7, 2010;

    b)    A failure to respond appropriately to signs and symptoms of uterine rupture;

11

    c)    A failure to respond appropriately to signs and symptoms of fetal distress;

    d)    An inappropriate delay in detecting fetal heart tones; and

    e)    An inappropriate delay in performing a C-Section.

54.    As a direct and proximate result of the Defendant's negligence, as aforesaid, Noah Whitney has sustained a severe brain injury, including but not limited to dystonic cerebral palsy, hypoxic ischemic encephalopathy, seizures, feeding difficulties, and global developmental delays.

55.    As a direct and proximate result of the Defendant's negligence, as aforesaid:

    a)    Noah will require 24 hour per day care for the remainder of his life;

    b)    Noah has experienced and will continue to experience severe physical pain, extreme emotional and mental distress, humiliation, deformity, disfigurement, loss of enjoyment of life, and loss of consortium;

    c)    Noah has required and will continue to require extensive medical and rehabilitative care, life care and support; and

    d)    Noah has suffered a complete loss of earning capacity.

Noah Whitney therefore is entitled to recover special and general damages in amounts sufficient to compensate him for the aforementioned devastating injuries and losses, as will be proven at trial.

## SECOND CLAIM FOR RELIEF
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

56.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 55, above, as if fully set forth herein.

57.    As a direct and proximate result of the Defendant's negligence, as aforesaid, Noah Whitney's parents, Plaintiff Laura Whitney and Plaintiff Richard Whitney, and Noah Whitney's brother, Plaintiff Evan Whitney, have suffered and will continue to suffer severe emotional distress.  Plaintiffs Laura Whitney, Richard Whitney, and Evan Whitney are therefore entitled to recover general damages in amounts to be proven at trial.

## THIRD CLAIM FOR RELIEF
## LOSS OF CONSORTIUM

58.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 57, above, as if fully set forth herein.

59.    As a direct and proximate result of the Defendant's negligence, as aforesaid, Noah Whitney's parents, Plaintiff Laura Whitney and Plaintiff Richard Whitney, and Noah Whitney's brother, Plaintiff Evan Whitney, have suffered and will continue to suffer loss of consortium.  Plaintiffs Laura Whitney, Richard Whitney, and Evan Whitney are therefore entitled to recover general damages in amounts to be proven at trial.

## FOURTH CLAIM FOR RELIEF
## <u>CLAIM FOR PARENTS' ECONOMIC LOSSES</u>

60.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 59, above, as if fully set forth herein.

61.    As a direct and proximate result of the Defendant's negligence, as aforesaid, Noah Whitney's parents, Plaintiff Laura Whitney and Plaintiff Richard Whitney, have incurred and will continue to incur substantial economic losses for which they are entitled to recover compensation from Defendant.  These losses include, but are not limited to, the costs associated with providing special care for Noah Whitney necessitated by Defendant's negligence, and the reasonable value of their time required to provide the special care for Noah Whitney necessitated by Defendant's negligence.

///

///

///

///

///

///

///

///

WHEREFORE, Plaintiffs pray that judgment be entered in their favor and against Defendant United States of America for general and special damages in amounts to be proven at trial. Plaintiffs further pray that they be awarded their reasonable attorneys' fees and costs of suit and such other and further relief as the Court deems just and proper.

DATED:  Honolulu, Hawaii, July 6, 2012.

MICHAEL K. LIVINGSTON
MARK S. DAVIS
LORETTA A. SHEEHAN
ERIN C. DAVIS
Attorneys for Plaintiff