IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LAURA M. WHITNEY and RICHARD WHITNEY, Individually and as Next Friends of Their Minor Sons E.W. and N.W., <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | CIVIL NO. 12-00382 HG-RLP <br><br> FINDINGS AND RECOMMENDATION TO DENY PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT |

FINDINGS AND RECOMMENDATION TO DENY
PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT[1]

Before the Court is Plaintiffs' Motion to Enforce Settlement, filed on February 19, 2015 ("Motion"). ECF No. 122. Defendant filed its Opposition to the Motion on March 16, 2015. ECF No. 128. Plaintiffs filed their Reply on March 23, 2015. ECF No. 129. A hearing on this matter was held on April 1, 2015, at 10:00 a.m. Michael K. Livingston, Esq. and Loretta A. Sheehan, Esq. appeared on behalf of Plaintiffs and Harry Yee, Esq. appeared on behalf of Defendant. After careful consideration of the Motion, the supporting and opposing memoranda, declarations and exhibits attached thereto, the

---

[1] Within fourteen days after a party is served with a copy of the Findings and Recommendation, that party may, pursuant to 28 U.S.C. § 636(b)(1)(B), file written objections in the United States District Court. A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the Findings and Recommendation. If no objections are filed, no appellate review will be allowed.

arguments of counsel, and the record established in this action, the Court FINDS AND RECOMMENDS that Plaintiffs' Motion be DENIED.

FINDINGS OF FACT

Based on the evidence submitted by the parties, the Court makes the following findings of fact.

This medical malpractice action was filed pursuant to the Federal Tort Claims Act against the United States of America for injuries and damages sustained by N.W., a minor, his brother E.W., a minor, and their parents, Richard Whitney and Laura Whitney, during the course of N.W.'s delivery and birth at Tripler Army Medical Center in 2010.

Counsel participated in a private mediation on January 9, 2014. See ECF No. 122-5, Decl. of Michael K. Livingston ("Livingston Decl.") ¶ 5. On January 27, 2014, the parties placed on the record in this court "a settlement agreement, which is conditional upon approvals." See ECF No. 106, Tr. of 1/27/14 Settlement on the Record, at 2. The form of the proposed settlement was to be the same as was used in a prior case, McCraw, which included the use of a reversionary annuity and a special needs trust but not a reversionary trust. ECF No. 106, Tr. of 1/27/14 Settlement on the Record, at 5-6; Livingston Decl. ¶¶ 14, 17.

As stated by Plaintiffs' counsel, Mr. Livingston, during the hearing, the settlement was conditioned upon the approval of the Hawaii Circuit Court and the Department of

Justice. ECF No. 106, Tr. of 1/27/14 Settlement on the Record, at 3-4. Counsel for Defendant, Mr. Yee, was to submit the settlement "for final approval" to the Department of Justice with his recommendation. Id. at 4. "Once the necessary approval is received from the Department of Justice, the settlement will become final." Id. The Court vacated the trial date and set a further status conference for six months out. Id. at 8-9.

The next day, Mr. Yee emailed Mr. Livingston "the proposed settlement documents" for review. ECF No. 122-16 at 4. Counsel exchanged several emails in February and March 2014 regarding changes to the proposed settlement documents. See id. at 6-9, 12-13, 17-21. The finalized documents were submitted along with petitions for approval of the settlement and protective arrangements for N.W. and E.W. to the Hawaii Probate Court, which set the matters for hearing in late May 2014. Id. at 25; Livingston Decl. ¶ 29. The Hawaii Probate Court approved the settlement terms and the protective arrangements by written order on June 6, 2014. See ECF No. 122-11

Mr. Livingston provided Mr. Yee copies of required documents in June 2014, including the settlement documents executed by Plaintiffs and updated medical records. Livingston Decl. ¶¶ 32, 33; ECF No. 122-16 at 30-36.

On July 7, 2014, the Court inquired regarding the status of the case. ECF No. 122-16 at 38. Mr. Yee responded that "[t]he settlement is pending review and recommendation of

the director of the DOJ Torts Branch, after which it will be forwarded to the Assistant Attorney General for approval." Id. On the same day, Mr. Livingston asked Mr. Yee for any update on the status. Id. at 39. Mr. Yee responded that he was "trying to resolve the issue created by the special needs trust." Id. On July 17, 2014, the Court again inquired regarding the status of the case. Id. at 41. Mr. Yee responded that the "proposed settlement is under review and pending approval of the Assistant Attorney General." Id.

On August 5, 2014, Mr. Yee emailed Mr. Livingston proposing changes to the settlement documents "to advance the approval of the settlement agreement" at the Torts Division. Id. at 42. Specifically, Mr. Yee proposed "returning the stipulation and settlement agreement" to the original standard form used by the Torts Division and removing the language referring to a special needs trust. Id. Mr. Yee stated that if Plaintiffs agreed to these changes, the parties should schedule a status conference with the court "to confirm these changes which should also move the approval process along at Tort's [sic] Division." Id.

Mr. Livingston responded that Mr. Yee's suggested approach was acceptable and asked if "there is anything more or different that DOJ will require before giving its approval to the settlement?" Id. at 45. Mr. Yee responded "[a]lthough we both would like to know that resolution of this issue guarantees

4

approval that is not how the process works." Id. at 44. Mr. Yee reiterated that the Torts Division reviews proposed settlements over $1 million and then recommends to the Assistant Attorney General who "has the final approval over our proposed settlement." Id. Mr. Yee expressly stated that he "did not have any authority over the [Assistant Attorney General] nor can I commit the DOJ to this or any settlement." Id. Mr. Livingston responded asking if the Torts Division would "recommend the settlement to the [Assistant Attorney General] if we go along with the resolution you have suggested." Id. Mr. Yee replied that although he believed the proposed resolution would remove the Torts Division's opposition to the proposed settlement, "pushing the issue further to get [the Torts Division] to commit to recommending the settlement to the [Assistant Attorney General] at this time would not be prudent." Id.

On August 7, 2014, Mr. Livingston agreed to Mr. Yee's approach and stated that he hoped "we can move things along quickly to get a final decision soon, one way or another, from DOJ." Id. at 47. Mr. Yee responded that he understood Plaintiffs' frustrations, but that "it is the process I must comply with to get any settlement approved." Id.

Mr. Livingston emailed the changed settlement documents to the financial service being used to establish the trusts stating that these changes were made "in an attempt to get DOJ approval of the settlement." Id. at 55. Mr. Livingston emailed

Mr. Yee stating that he was awaiting confirmation from the financial service regarding the terms of payment to the trust in the changed settlement documents because "the special needs trust is and must remain a part of our settlement." Id. at 57. On August 26, 2014, Mr. Livingston received confirmation from the financial service and stated that Plaintiffs were prepared to move forward with the proposed changes to the settlement documents. Id. at 61.

On August 29, 2014, the parties appeared before the Court again to put the changes to the proposed settlement terms on the record. ECF No. 112, Tr. of 8/29/14 Status Conference Re: Settlement. At the hearing, Mr. Livingston stated "that these modifications to the stipulation are likely to remove the roadblock at Torts Division," and emphasized that "Mr. Yee has made no guaranty, certainly, that ultimate approval will be issued." Id. at 6. The Court noted that the proposed settlement terms had been placed on the record nearly seven months ago and inquired about the delay in the process. Id. at 4-7. Mr. Livingston stated that "there was more delay in that process than we anticipated because some of the complexities and some of the delays we encountered over in State Court. So not all the delay here is attributable to the Department of Justice in Washington, D.C." Id. at 5. Mr. Yee stated that he would "pursue whatever efforts I can in order to move along the settlement." Id. at 6. The Court noted that "the significant delay was getting the State

Court to approve" the terms of the proposed settlement, which did not occur until June 6, 2014, and stated that "everybody has used reasonable diligence in getting this thing brought to a conclusion." Id. at 6-7. In approving the settlement, the Court expressly stated that it was informed of the specific terms and conditions of the settlement "including the necessity of the approval by the Attorney General of the United States." ECF No. 109 at 2.

A further status conference was held on October 30, 2014. ECF No. 113, Tr. of 10/30/14 Status Conference. Mr. Yee informed the Court that the settlement was still in the process of being reviewed by the Torts Division. Id. at 2. Mr. Yee stated that the proposed settlement "has not been submitted to the Assistant Attorney General for final approval yet." Id. Mr. Livingston stated that "we need a decision, one way, or the other." Id. at 5. Mr. Livingston argued that Defendant's delay was inexcusable and that the court should enforce the settlement without final approval. Id. at 4-5. Mr. Yee argued that not all of the delay was attributable to Defendant and stated that "the Assistant Attorney General has the final authority to decide whether or not to settle a case." Id. at 6. The Court stated that "the U.S. Department of Justice through the Torts Branch does have the final authority on cases of this magnitude" and held that Plaintiffs' request to enforce the settlement was premature. Id. at 10-11. The Court ordered a further status

conference and directed participation by the Department of Justice so that they could provide a briefing on the review and "the prospects of either review and approval or review and disapproval from the Assistant AG." Id. at 11.

On November 4, 2014, following a telephone call between counsel, Mr. Yee sent Mr. Livingston revised settlement documents drafted by the Torts Division. ECF No. 122-16 at 67. Mr. Yee stated that if Plaintiffs signed the revised documents and the parties obtained court approval, the Torts Division "will support the settlement amount" and the apportionment of that amount between up-front cash with the remainder in a "reversionary trust." Id. On November 18, 2014, Mr. Livingston sent a letter to Mr. Yee stating that Plaintiffs "have decided to reject the attempt by the United States of America to substitute a reversionary trust for the special needs trust." Id. at 69. Mr. Livingston stated that "the decision by the Torts Branch of the Department of Justice to disapprove of the settlement" because the funds were to be placed in a special needs trust was discrimination and a breach of the Attorney General's duty to act in good faith. Id. On January 13, 2015, Defendant made another settlement proposal to Plaintiffs that included a reversionary trust, which was also rejected by Plaintiffs. Id. at 73, 74.

The present Motion followed.

## DISCUSSION

A district court has equitable powers to summarily

enforce a settlement reached by the parties in a case pending before it. Callie v. Near, 829 F.2d 888, 890 (9th Cir. 1987). If material facts concerning the existence of an enforceable settlement agreement are in dispute, the parties must be allowed an evidentiary hearing. Id. (citing Russell v. Puget Sound Tug & Barge Co., 737 F.2d 1510, 1511 (9th Cir. 1984)); see also Moran v. Guerreiro, 37 P.3d 603, 620 (Haw. Ct. App. 2001). To determine whether to enforce a settlement agreement, federal courts apply state contract law principles. O'Neil v. Bunge Corp., 365 F.3d 820, 822 (9th Cir. 2004). However, "[f]ederal law governs the interpretation of contracts where the United States is a party." Mohave Valley Irrigation & Drainage Dist. v. Norton, 244 F.3d 1164, 1165 (9th Cir. 2001) (citing O'Neill v. United States, 50 F.3d 677, 682 (9th Cir. 1995)).

Here, Plaintiffs argue that a binding settlement agreement was created on August 29, 2014, when the parties placed the revised settlement terms on the record. ECF No. 122-1 at 16-17, 24. Plaintiffs argue that the settlement should be enforced because (1) Mr. Yee had both actual and apparent authority to bind the United States to the use of a special needs trust in connection with this settlement; and (2) the condition precedent of final approval by the Attorney General should be excused. Defendant argues that no settlement was reached because Mr. Yee did not have authority and the proposed settlement was subject to final approval, which was not obtained. Based on the evidence

submitted by the parties, the Court finds that no enforceable settlement agreement existed between the parties because the Attorney General did not approve the settlement terms.

**I. Mr. Yee Did Not Have Authority to Bind the United States in Settlement.**

The Court rejects Plaintiffs' argument that Mr. Yee had actual or apparent authority to bind the United States in the proposed settlement. It is well settled that the government is not bound by the acts of an agent unless the agent is acting within the limits of his actual authority. Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947). Under 28 U.S.C. § 510, the Attorney General has developed a set of regulations delegating settlement authority to various officials. See 28 C.F.R. §§ 0.160-0.172. The United States Attorney has authority to settle claims up to $1 million. See 28 C.F.R. Appendix to Subpart Y of Part 0, § 1(B)(2). Settlements higher than $2 million must be recommended for approval by the Assistant Attorney General and approved by the Associate Attorney General. See 28 C.F.R. §§ 0.160, 0.161. Here, the amount of the proposed settlement exceeded $2 million, therefore, approval of the Associate Attorney General was required.

Based on the record before the Court, it is evident that Plaintiffs understood that Mr. Yee did not have authority to bind the United States in the settlement and that final approval must be obtained from the Department of Justice. At the first

hearing to put the settlement on the record on January 27, 2014, Mr. Livingston stated that the settlement agreement "is conditional upon approvals" including "final approval" from the Department of Justice. ECF No. 106, Tr. of 1/27/14 Settlement on the Record, at 3, 4. Mr. Livingston stated that "[o]nce the necessary approval is received from the Department of Justice, the settlement will become final, the settlement funds will be paid, and the case will be dismissed with prejudice, with each party to bear its own fees and costs." Id. at 4. At the August 29, 2014, status conference, Mr. Livingston again acknowledged that the settlement documents had been "submitted for final approval by the Department of Justice and the Attorney General." ECF No. 112, Tr. of 8/29/14 Status Conference Re: Settlement, at 5. Mr. Livingston expressly stated that "Mr. Yee has made no guaranty, certainly, that ultimate approval will be issued." Id. at 6. During the status conference on October 20, 2014, Mr. Livingston again stated that Plaintiffs "need a decision, one way, or the other." Id. at 5. The evidence before the Court demonstrates that Plaintiffs understood throughout the settlement process that Mr. Yee did not have the authority to bind the United States in settlement and that final approval must be obtained from the Department of Justice.

**II. Plaintiffs Have Failed to Demonstrate That Approval By the Attorney General Should Be Excused.**

Plaintiffs argue that the settlement should be enforced

because Defendant did not act in good faith in making its decision to disapprove the settlement terms. ECF No. 122-1 at 24-45. Plaintiffs contend that the "condition of approval" is therefore excused and the settlement should be enforced. Id. at 24. Plaintiffs do not provide any authority to support their proposition that government approval of a proposed settlement can be excused. The only case cited by Plaintiffs that involved a government settlement is distinguishable from the present case on the facts. In Reed v. United States, 717 F. Supp. 1511 (S.D. Fla. 1988), cited by Plaintiffs in their Motion, final approval of the proposed settlement by the Deputy Attorney General had been obtained. See 717 F. Supp. at 1515 ("The condition precedent to final approval was, therefore, fulfilled two days prior to the infant's death and the settlement agreement became binding on November 26, 1986."). It was only because this final approval was obtained that the Court determined that the settlement was binding on the United States. Id. at 1515-16. Even assuming that such principles apply in seeking to enforce a settlement agreement against the government, Plaintiffs have failed to demonstrate that the approval of the Attorney General should be excused.[2]

---

[2] In their Reply, Plaintiffs argue for the first time that Defendant should be estopped from disapproving the settlement. See ECF No. 129 at 17. Although Plaintiffs base their argument on a case cited by Defendant in its Opposition, Defendant did not raise the issue of estoppel in its Opposition. Even assuming that Plaintiffs had properly raised the issue of estoppel, the Court finds that this case is not "the sort of extraordinary

First, the Court rejects Plaintiffs' arguments that Defendant acted unreasonably and in bad faith by proposing new settlement terms that included a reversionary trust. Plaintiffs go into great detail regarding why a special needs trust, as originally proposed, is superior to a reversionary trust, which was proposed by Defendant in November 2014 and January 2015. See ECF No. 122-1 at 24-28, 30-43. There is no dispute that Plaintiffs did not accept the proposed reversionary trust settlement terms offered by Defendant. See ECF No. 122-16 at 69, 71, 74. The Court will not render a decision regarding the merits of a hypothetical settlement structure. The merits of a reversionary trust as compared to a special needs trust are not appropriately before the Court. Plaintiffs were free to reject the offers of settlement using a reversionary trust structure, which they did. Plaintiffs' attempt to use the new offers of settlement to demonstrate Defendant's lack of good faith in disapproving the original proposed settlement is unpersuasive and unsupported by any authority. Likewise, the Court is unpersuaded by Plaintiffs' argument that Defendant acted in bad faith by

---

circumstances" necessary to support such a finding. See White v. United States Dep't of Interior, 639 F. Supp. 82, 91 (M.D. Pa. 1986). Plaintiffs have failed to provide any evidence of affirmative misconduct "attributable to the United States which they detrimentally reasonably relied on." Id. As discussed in detail above, Plaintiffs engaged in settlement discussions with full knowledge that the settlement terms had to be approved by the Attorney General, and there is no indication that the Attorney General acted in bad faith in disapproving the settlement.

disapproving the settlement structure that was already approved by the Hawaii Probate Court.  ECF No. 122-1 at 29-30.  The proposed settlement documents expressly provided that the Attorney General's approval of the terms of the settlement was a separate condition from the approval of the Hawaii Probate Court.  See ECF No. 109.  Plaintiffs' argument that the Department of Justice has attempted to invade the jurisdiction of the Hawaii Probate Court by disapproving the settlement terms is without merit.

Second, the Court rejects Plaintiffs' arguments that Defendant acted in bad faith in delaying its disapproval of the proposed settlement.  See ECF No. 122-1 at 43-45.  Although nearly ten months passed between the parties' mediation and disapproval of the settlement, there is no evidence before the Court that the delay was a result of Defendant's bad faith.  Plaintiffs' counsel expressly stated when the parties placed the settlement on the record on January 27, 2014, that he expected the approval process to take at least six months.  See ECF No. 106, Tr. of 1/27/14 Settlement on the Record, at 9 ("six months doesn't sound to me to be out of the realm of probability").  At the hearing on August 29, 2014, Plaintiffs' counsel acknowledged that "not all the delay here is attributable to the Department of Justice."  ECF No. 112, Tr. of 8/29/14 Settlement on the Record, at 5.  As detailed above, the Hawaii Probate Court did not issue its written order approving the proposed settlement structure

14

until June 6, 2014.  See ECF No. 122-11.  In early August 2014, the parties were working cooperatively to modify the proposed settlement terms.  See ECF No. 122-16 at 42-64.  The modified terms were placed on the record on August 29, 2014.  See ECF No. 112.  Defendant disapproved the proposed settlement terms on November 4, 2014, as evidenced by Mr. Yee's letter offering a new settlement proposal that included a reversionary trust.  See ECF No. 67.  The delay of two months and six days between August 29, 2014, and November 4, 2014, is not unreasonable.  Even going back to the June 6, 2014, approval date from the Hawaii Probate Court, a five-month delay in disapproving the settlement terms is not unreasonable.  Plaintiffs were aware of the steps necessary to obtain approval of the settlement.  Defendant's counsel was responsive in providing status updates to the Court and to Plaintiffs' counsel.  See ECF No. 122-16.  There is no indication that Mr. Yee delayed in transmitting any of the proposed settlement documents to the necessary parties at the Department of Justice.  The Court is concerned that the delay in disapproving the settlement on the basis of a material term, namely, the use of a special needs trust, was nearly ten months.  Generally, a material term of a proposed settlement, like the use of a special needs trust, would have been resolved by the parties at the outset of settlement negotiations.  However, based on a careful review of all the evidence, the Court concludes that Plaintiffs have failed to demonstrate that the delay in this

action was caused by Defendant's lack of good faith.

Based on the evidence presented by the parties and the relevant legal authority, the Court concludes that no enforceable settlement agreement exists between the parties because the Attorney General did not give final approval to the settlement terms. The Court FINDS and RECOMMENDS that Plaintiffs' Motion be DENIED.

CONCLUSION

In accordance with the foregoing, the Court FINDS AND RECOMMENDS that Plaintiffs' Motion to Enforce Settlement be DENIED.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, APRIL 2, 2015.

_____
Richard L. Puglisi
United States Magistrate Judge

**WHITNEY, ET AL. V. UNITED STATES OF AMERICA; CIVIL NO. 12-00382 HG-RLP; FINDINGS AND RECOMMENDATION TO DENY PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT**