IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LAURA M. WHITNEY and RICHARD WHITNEY, Individually and as Next Friends of Their Minor Sons E.W. and N.W., | ) ) ) ) ) | CV NO. 12-00382 HG-RLP |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**ORDER DENYING PLAINTIFFS' OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION TO DENY PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT (ECF No. 138)**

**and**

**ADOPTING THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION TO DENY PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT (ECF No. 131)**

Plaintiffs filed a medical malpractice action against the United States of America pursuant to the Federal Tort Claims Act. The Plaintiffs' complaint alleges injuries and damages sustained by N.W., a minor, his brother E.W., a minor, and their parents, Laura and Richard Whitney, as a result of N.W.'s delivery and birth at Tripler Medical Center in 2010.

Plaintiffs reached a proposed settlement with the Assistant United States Attorney that was conditioned upon approval by the United States Department of Justice. The Department of Justice

rejected the proposed settlement.

Plaintiffs filed a Motion to Enforce Settlement.

The Magistrate Judge entered a Findings and Recommendation to Deny Plaintiffs' Motion to Enforce Settlement. (ECF No. 131). Plaintiffs object to the Findings and Recommendation. (ECF No. 138).

Plaintiffs' Objections (ECF No. 138) are **DENIED**.

The Court **ADOPTS** the Magistrate Judge's April 3, 2015 Findings and Recommendation (ECF No. 131).

## PROCEDURAL HISTORY

On July 6, 2012, Plaintiffs Laura M. Whitney and Richard Whitney, Individually and as Next Friends of Their Minor Sons E.W. and N.W., filed a Complaint against the Defendant United States of America. (Complaint, ECF No. 1).

On January 27, 2014, a proposed settlement was placed on the record, which was conditional upon approvals by the Hawaii State Probate Court and the United States Department of Justice. (ECF No. 100).

On June 6, 2014, the Hawaii State Probate Court approved the settlement terms. (ECF No. 122-11).

On August 29, 2014, the Parties appeared before the Magistrate Judge and placed a revised proposed settlement on the record. (ECF No. 108).

On September 4, 2014, the Magistrate Judge issued an Order

approving the reasonableness of the settlement, finding that it was in the best interests of the minors. (ORDER APPROVING SETTLEMENT ON BEHALF OF MINORS, ECF No. 109). The Magistrate Judge stated in his Order the specific terms and conditions of the settlement "including the necessity of the approval by the Attorney General of the United States." (Id. at p. 2).

On October 30 and November 28, 2014, the Magistrate Judge held status conferences to review the progress of the review of the proposed settlement by the United States Department of Justice. (ECF Nos. 111, 114).

At the January 15, 2015 status conference before the Magistrate Judge, counsel for the Defendant informed the Court that the proposed settlement was rejected by the United States Department of Justice. (ECF No. 118).

On February 19, 2015, Plaintiffs filed a MOTION TO ENFORCE SETTLEMENT. (ECF No. 122).

On March 16, 2015, Defendant filed its OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT. (ECF No. 128).

On March 23, 2015, Plaintiffs filed a REPLY. (ECF No. 129).

On April 1, 2015, the Magistrate Judge held a hearing on Plaintiffs' Motion to Enforce Settlement. (ECF No. 130).

On April 3, 2015, the Magistrate Judge issued Findings and Recommendation to Deny Plaintiffs' Motion to Enforce Settlement. (ECF No. 131).

On April 14, 2015, the District Court Judge granted Plaintiffs' request for a one-week extension to file Objections to the Findings and Recommendation. (ECF No. 133).

On April 24, 2015, Plaintiffs filed their OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION TO DENY PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT. (ECF No. 138).

On May 5, 2015, the District Court Judge held a status conference and continued the Trial Date and the Trial-Related Deadlines. (ECF No. 140).

On May 7, 2015, Defendant filed their RESPONSE TO PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION TO DENY PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT. (ECF No. 141).

## STANDARD OF REVIEW

**Objections to a Magistrate Judge's Findings and Recommendation**

A magistrate judge may be assigned to prepare findings and recommendations for a district judge on a pretrial matter that is dispositive of a claim. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(B). Any party may object to a magistrate judge's findings and recommendations, pursuant to United States District of Hawaii Local Rule 74.2.

If a party objects to the magistrate judge's findings or recommendations, the district court must review de novo those

4

portions to which objection is made.  <u>United States v. Raddatz</u>,
447 U.S. 667, 673 (1980); Fed. R. Civ. P. 72(b).  The district
court may accept, reject, or modify, in whole or in part, the
findings and recommendations made by the magistrate judge, or
recommit the matter to the magistrate judge.  28 U.S.C. §
636(b)(1)(C).

De novo review means the district court must consider the
matter anew, as if it had not been heard before and as if no
decision previously had been rendered.  <u>Dawson v. Marshall</u>, 561
F.3d 930, 933 (9th Cir. 2009).  The district court must arrive at
its own independent conclusion about those portions to which
objections are made, but a de novo hearing is not required.
<u>United States v. Remsing</u>, 874 F.2d 614, 617-18 (9th Cir. 1989).

**Motion to Enforce Settlement**

A federal court has the equitable power to summarily enforce
a settlement reached by the parties in a case pending before it.
<u>Callie v. Near</u>, 829 F.2d 888, 890 (9th Cir. 1987).  Federal
courts generally apply state contract law principles to determine
whether to enforce a settlement agreement.  <u>O'Neil v. Bunge
Corp.</u>, 365 F.3d 820, 822 (9th Cir. 2004).  Federal law governs
the interpretation of contracts where, such as here, the United
States is a party and the dispute involves federal law.  <u>Mohave
Valley Irrigation & Drainage Dist. v. Norton</u>, 244 F.3d 1164, 1165

5

(9th Cir. 2001).

The Court agrees with Plaintiffs that because the terms of the proposed settlement and its revisions were placed on the record in this case, an evidentiary hearing would be redundant. Doi v. Halekulani Corp., 276 F.3d 1131, 1138 (9th Cir. 2002); Wilson v. Wilson, 46 F.3d 660, 665 (7th Cir. 1995).

## ANALYSIS

### I. The Assistant United States Attorney Did Not Have the Authority to Bind the United States

The federal government is not bound by the acts of its agent unless the agent is acting within the limits of his actual authority. Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947).

Pursuant to 28 U.S.C. §§ 516-19, the Attorney General of the United States is vested with the authority to conduct all litigation on behalf of the United States and its agencies and officers, unless otherwise provided by law. The Attorney General has the authority to settle any claim pursuant to the Federal Tort Claims Act. 28 U.S.C. § 2677. A portion of the Attorney General's authority to settle claims has been delegated to various subordinate officials within the United States Department of Justice. 28 U.S.C. § 510; 28 C.F.R. §§ 0.160-0.172.

The Attorney General has delegated settlement authority in civil cases to the Assistant Attorney General for the Civil

6

Division for claims up to $2 million dollars.  28 C.F.R. §
0.160(a)(2).  Settlements higher than $2 million dollars must be
recommended for approval by the Assistant Attorney General and
approved by the Associate Attorney General.  28 C.F.R. § 0.160,
0.161(b).

The Magistrate Judge correctly determined that the amount of
the proposed settlement between the Parties would require
approval of the Associate Attorney General.  (Findings and
Recommendation at p. 10, ECF No. 131).

An Assistant United States Attorney cannot bind the
government into a settlement that involves more than $2 million
dollars, even if he represents that he has the authority to do
so.  See Turner v. United States, 875 F.Supp. 1430, 1436 (D. Nev.
1995); White v. U.S. Dept. of Interior, 639 F.Supp. 82, 88-90
(M.D. Pa. 1986).

The Magistrate Judge correctly found that Assistant United
States Attorney Yee ("AUSA Yee") did not have the authority nor
did he represent that he had the authority to bind the Defendant
United States in Settlement.  (Findings and Recommendation at pp.
10-11, ECF No. 131).


**II.  There Was No Mutual Assent by the Parties to All Material
       Terms that Would Constitute a Complete Settlement**

The formation of a settlement contract requires a complete

7

settlement on all its material terms.  <u>Callie</u>, 829 F.2d at 890.

Federal contract law is guided by general principles of contract

law and by the Restatement on Contracts.  <u>First Interstate Bank</u>

<u>of Idaho v. Small Business Administration</u>, 868 F.2d 340, 343 (9th

Cir. 1989).  The Restatement Second of Contracts requires mutual

assent to all material terms of the contract.  <u>See</u> Restatement 2d

of Contracts §§ 17, 18, 20.

Here, there was never a complete settlement agreement

between the Plaintiffs and Defendant.  Plaintiffs were aware that

their negotiations with AUSA Yee were conditioned on approval by

the Department of Justice.

## A.    The Settlement Process

On January 27, 2014, Plaintiffs and AUSA Yee placed a

settlement agreement on the record.  (Transcript of Settlement

Proceedings held on 1/27/14, ECF No. 106).  Plaintiffs' attorney

acknowledged at the January 27, 2014 settlement conference that

the settlement agreement was conditioned upon the approval of the

Hawaii Probate Court and the United States Department of Justice.

(<u>Id.</u> at pp. 3-4).

On June 6, 2014, the Hawaii Probate Court approved the terms

of the proposed settlement agreement and issued a written order.

(Order Granting Petition for Appointment of Special Conservator

for Authority to Compromise Claim and to Fund Existing Trust at

¶¶ G, J, attached as Ex. E-2 to Pla.'s Motion to Enforce Settlement, ECF No. 122-11).

Plaintiffs argue that the Department of Justice had approved the proposed settlement between Plaintiffs and AUSA Yee before the Hawaii Probate Court entered its Order. (Objections at pp. 33-34, ECF No. 138). This argument is belied by the record. It was made clear to the Hawaii Probate Court that no final approval had been given by the Department of Justice. The Hawaii Probate Court stated in its Order: "The Court understands that this Settlement is contingent upon satisfaction of the terms set forth in the Settlement Agreement, including the necessity of the approval of the Attorney General of the United States...." (Id. at ¶ J).

The record demonstrates that the documents for the proposed settlement agreement were provided to the Department of Justice for review, after there was approval by the Hawaii Probate Court. (Declaration of Michael K. Livingston at ¶¶ 32-36, ECF No. 122-5; Email from Mr. Livingston to AUSA Yee dated June 6, 2014, at p. 31, attached as Ex. I to Pla.'s Motion to Enforce Settlement, ECF No. 122-16).

On July 7, 2014, AUSA Yee sent an e-mail to Magistrate Judge Puglisi's Chambers and copied Plaintiffs' attorneys, stating: "The settlement is pending the review and recommendation of the director of the DOJ Torts Branch, after which it will be

forwarded to the Assistant Attorney General for approval."
(Email from AUSA Yee to Judge Puglisi's Chambers dated July 7,
2014, at p. 38, attached as Ex. I to Pla.'s Motion to Enforce
Settlement, ECF No. 122-16).

### B. Modification of the Proposed Settlement

On August 5, 2014, AUSA Yee e-mailed Plaintiffs' attorney,
Mr. Livingston, and informed him that the Department of Justice
opposed the proposed settlement agreement in its current form.
(Email from AUSA Yee to Mr. Livingston dated August 5, 2014, at
p. 42, attached as Ex. I to Pla.'s Motion to Enforce Settlement,
ECF No. 122-16). Mr. Yee stated in his e-mail: "In order to
advance the approval of the settlement agreement, I believe after
much discussion, returning the stipulation and settlement
agreement to original Tort's Division standard form will address
their concerns and opposition to the current form of the
agreement." (Id.)

The following day, on August 6, 2014, Mr. Livingston sent an
e-mail to AUSA Yee, asking if the revisions would guarantee
approval by the Department of Justice. (Email from Mr.
Livingston to AUSA Lee dated August 6, 2014, at p. 45, attached
as Ex. I to Pla.'s Motion to Enforce Settlement, ECF No. 122-16).
AUSA Yee responded to Mr. Livingston's e-mail and explained:

> Although we both would like to know that resolution of
> this issue guarantees approval that is not how the

process works.  As you know from past settlements, the
Torts Division reviews our proposed settlements over $1
million dollars and then recommends to the Assistant
Attorney General (the AGG is the number 3 person in
DOJ) over Civil.  The AAG has the final approval over
our proposed settlement.  I do not have any authority
over the AAG nor can I commit the DOJ to this or any
settlement.  I believe I have substantiated and
supported our proposed settlement and I stand ready to
answer any further requests for information from Torts
Division or the AAG.  My [Point of Contact] has not
commented on the amount of the settlement or any other
issues, that is the best I can tell you, however
without the resolution I have proposed I believe the
DOJ approval process stops and all our efforts will be
for naught.

(Email from AUSA Yee to Mr. Livingston dated August 6, 2014,

at p . 44, attached as Ex. I to Pla.'s Motion to Enforce

Settlement, ECF No. 122-16).

The same day, Mr. Livingston e-mailed AUSA Yee again and

asked if the Torts Division would recommend the settlement if

they revised their proposed settlement and AUSA Yee responded:

I've gotten the concurrence of my [Point of Contact] at
Torts that the changes would remove their opposition to
the form of the settlement agreement.  I believe
pushing the issue further to get them to commit to
recommending the settlement to the AAG at this time
would not be prudent.  I also believe if I ask they
could not commit to recommending the settlement because
they have not completed their review.

(Email from AUSA Yee to Mr. Livingston dated August 6, 2014,

at p . 44, attached as Ex. I to Pla.'s Motion to Enforce

Settlement, ECF No. 122-16).

Plaintiffs and AUSA Yee agreed to revise the terms of their

settlement agreement.  On August 29, 2014, Plaintiffs and AUSA

Yee placed their revised settlement on the record before the

Magistrate Judge. (ECF Nos. 108, 112). The August 29, 2014

revised, proposed settlement agreement states:

> The Attorney General or the Attorney General's designee
> must approve the terms of the settlement and authorize
> the attorney representing the United States to
> negotiate and consummate a settlement for the amount
> and upon the terms and conditions agreed upon by the
> parties, as set forth in this Stipulation.

(Revised Stipulation for Compromise Settlement and Release

of Federal Tort Claims Act Claims Pursuant to 28 U.S.C. § 2677 at

5(a), attached as Ex. F to Pla.'s Motion to Enforce Settlement at

p. 12, ECF No. 122-13).

Plaintiffs argue that it was unreasonable for the Government

to reject their proposed settlement because "it previously had

confirmed that it would no longer oppose." (Objections at p. 12,

ECF No. 138). In their Objections, Plaintiffs state "although it

was clear that the settlement as a whole was conditional upon the

approval of DOJ, it was also clear that in August of 2014,

Plaintiffs had explicit confirmation from the Government, based

upon assurances from the DOJ point of contact, that DOJ's

opposition to the special needs trust would cease." (Id. at p.

11).

Plaintiffs' assertions that the Department of Justice had

ever approved any of the terms of the proposed settlement

misstates the record. At no point did AUSA Yee indicate that the

proposed settlement was approved by the Department of Justice.

AUSA Yee repeatedly stated that he "believed" the revisions to the settlement would remove opposition by his Point of Contact at the Torts Division. (See Emails at pp. 44, attached as Ex. I to Pla.'s Motion to Enforce Settlement, ECF No. 122-16). AUSA Yee explicitly told Plaintiffs that he could not get the Department of Justice officials to commit to recommending the revised settlement to the AAG. (Id. at e-mail dated August 6, 2014 at 4:56 p.m., at p. 44).

Plaintiffs Objections regarding the alleged approval of the proposed settlement terms are without merit. The record is clear that Plaintiffs were repeatedly told that their proposed agreement with AUSA Yee remained subject to approval by the Assistant Attorney General for recommendation to the Associate Attorney General. 28 C.F.R. § 0.160, 0.161(b).

There were never any agreements directly between Plaintiffs and the Associate or Assistant Attorney General. The Department of Justice never assented to the changes made to the terms of the proposed settlement. Callie, 829 F.2d at 890; Restatement 2d of Contracts §§ 17-18, 20, 22.

## C.  Department of Justice's Response to the Proposed Settlement

On November 4, 2014, AUSA Yee informed Plaintiffs' counsel that the United States had not accepted the terms of their proposed settlement agreement but had proposed alternative terms.

13

(Letter from AUSA Yee to Mr. Livingston dated November 4, 2014, attached as Ex. G to Pla.'s Motion to Enforce Settlement, ECF No. 122-14).

Two weeks later, on November 18, 2014, Plaintiffs rejected the United States' proposed counter-offer. (Letter from Mr. Livingston to AUSA Yee dated November 18, 2014, attached as Ex. S to Pla.'s Motion to Enforce Settlement, ECF No. 122-26).

On January 13, 2015, the Department of Justice rejected the proposed settlement agreement reached between Plaintiffs and AUSA Yee. (Email from Tom Helper, Chief of the United States Department of Justice, Civil Division, to Mr. Livingston dated January 13, 2015, attached as Ex. H to Pla.'s Motion to Enforce Settlement, ECF No. 122-15). The Department of Justice made a second counter-offer to the Plaintiffs that included a reversionary trust, which was also rejected by the Plaintiffs. (Id.; E-mail from Mr. Livingston to Mr. Helper, dated January 14, 2015, at p. 74, attached as Ex. I to Pla.'s Motion to Enforce Settlement, ECF No. 122-16).

There was never a complete, final agreement to all material terms of the settlement. Callie, 829 F.2d at 890. AUSA Yee did not have the authority to bind the United States to a settlement. The Associate Attorney General did not approve the proposed settlement nor did the Assistant Attorney General recommend the terms of the proposed settlement. 28 C.F.R. § 0.160, 0.161(b).

The Department of Justice made counter-offers to the proposed settlement, which were rejected by the Plaintiffs.

## III. Lack of Authority Excusing Settlement Approval by the Attorney General

The Magistrate Judge determined that Plaintiffs failed to provide any authority to support its position that approval of the Attorney General should be excused. (Findings and Recommendation at pp. 12, ECF No. 131). Plaintiffs object to the finding. (Objections at pp, 12-13, ECF No. 138).

The Magistrate Judge's finding was proper. Plaintiffs failed to cite any case where a court enforced a settlement against the United States and had excused the condition of approval by the Attorney General or her authorized designee. The Magistrate Judge properly distinguished the decision in Reed v. United States, 717 F.Supp. 1511, 1515 (S.D. Fla. 1988) cited by Plaintiffs. In Reed, the Department of Justice had provided final approval of the settlement. The Court enforced the settlement because final approval was given. Id. Here, at no point did the Department of Justice give final approval of the proposed settlement between Plaintiffs and AUSA Yee. The holding in Reed does not support the Plaintiffs' position. There was never an approved, final settlement for the Court here to enforce.

Plaintiffs also rely on the unpublished decision of the

Third Circuit Court of Appeals in <u>A.P. ex rel. Phinisee v. United States</u>, 556 Fed. Appx. 132, 134 (3d Cir. 2014). In <u>A.P.</u>, the Government was the party who filed a Motion to Enforce Settlement, not the plaintiff. (<u>Id.</u>) The district court found that the plaintiff had assented to all material terms of the settlement and granted the Government's Motion to Enforce settlement. (<u>Id.</u> at 136-38). The Third Circuit Court of Appeals upheld the enforcement of the settlement. (<u>Id.</u>)

Here, it is the Plaintiffs, not the Government, seeking to enforce the settlement. In <u>A.P.</u>, the district court did not excuse approval by the Department of Justice, but found that the settlement terms were enforceable against the plaintiff who had unconditionally agreed to all the material terms. <u>A.P.</u> does not support the Plaintiffs' position. The Department of Justice here has not given approval and there is no completed settlement.

Plaintiffs have not established that the Court has a basis to enforce a settlement against the United States where the Attorney General or her authorized designee has never given final approval of a settlement.

## IV.  Plaintiffs' Objections and Arguments Alleging the Department of Justice Acted in Bad Faith

### A.  Review of the Proposed Settlement by the Department of Justice

The Magistrate Judge properly found that the Department of

Justice was not unreasonable in reviewing the proposed settlement. (Findings and Recommendation at p. 14, ECF No. 131). On January 27, 2014, Plaintiffs and AUSA Yee placed the proposed settlement on the record. (Transcript of Settlement on the Record, ECF No. 106). Approximately five months after placing the settlement on the record, the Hawaii State Probate Court issued its order approving the proposed settlement on June 6, 2014. (ECF No. 122-11).

After the Probate Court's approval, the Department of Justice began its review of the proposed settlement. AUSA Yee was in contact with officials from the Department of Justice and in August 2014 discussed modifications to the settlement terms with Plaintiffs. Plaintiffs agreed to the modifications and the Parties placed a revised proposed settlement on the record on August 29, 2014. (ECF No. 112).

Two months and six days later, on November 4, 2014, the Department of Justice made a counter-offer to Plaintiffs. The Magistrate Judge found that the two months and six days it took for the Department of Justice to review the proposed settlement between August 29, 2014 and November 4, 2014, was not unreasonable. (Findings and Recommendation at p. 15, ECF No. 131).

Plaintiffs object to the Magistrate Judge's finding. Plaintiffs assert that the Magistrate Judge should have

calculated the Department of Justice's review to be until January
13, 2015, the date when the Department of Justice specifically
rejected the proposed settlement. (Objections at p. 12, ECF No.
138).

The Magistrate Judge correctly considered November 4, 2014,
as the date the Department of Justice rejected the proposed
settlement. A counter-offer is a rejection of the original offer
and terminates the power of acceptance. Restatement Second of
Contracts § 39, Comment a. Even if the Court considered January
13, 2015 as the date of rejection, the additional two months of
review by the Department of Justice was not unreasonable given
the complexity of the proposed settlement and the amount of money
involved.

The Magistrate Judge properly determined that there was no
bad faith in the Department of Justice taking time to review the
proposed agreements reached by Plaintiffs and AUSA Yee.
(Findings and Recommendation at pp. 14-15, ECF No. 131).

**B.  Department of Justice's Proposal to Use a Reversionary
Trust Rather than a Special Needs Trust**

The Plaintiffs' Objections also argue that the Department
of Justice acted unreasonably and in bad faith by proposing the
use of a reversionary trust rather than agreeing to the use of a
special needs trust as Plaintiffs had proposed. (Objections at
pp. 21-35, ECF No. 138).

Plaintiffs assert that they have a statutory right to a special needs trust, relying on the decision of the United States Court of Appeals for the Third Circuit in <u>Lewis v. Alexander</u>, 685 F.3d 325, 333 (3d Cir. 2012). In <u>Lewis</u>, the State of Pennsylvania had passed legislation seeking to regulate special needs trusts. <u>Id.</u> at 331. The appellate court found that the State law was preempted by the federal statute, 42 U.S.C. § 1396p(d)(4), governing Medicaid. <u>Id.</u> at 344. The Third Circuit Court of Appeals explained that the federal statute provides a federal definition for what constitutes a special needs trust and the State law was not permitted to impose different obligations. <u>Id.</u>

Contrary to Plaintiffs' assertion, the Third Circuit Court of Appeals did not find that there is a statutory right to a special needs trust. Rather, the Court found that the federal Medicaid statutes provide eligible individuals with a statutory right to receive medical assistance and held that a State may not pass legislation that attempts to change the federal eligibility requirements. <u>Id.</u>

The appeals court explained that "Congress established a general rule that trusts would be counted as assets for the purpose of determining Medicaid eligibility. But Congress also excepted from that rule three types of trusts meeting certain specific requirements. Taken together, these are generally

19

called 'special needs trusts' or 'supplemental needs trusts.'" Id. at 333.  The holding in Lewis does not mandate, as Plaintiffs suggest, that an individual has a statutory right to a special needs trust.  To the contrary, special needs trusts are an exception to the general rule.

The holding in Lewis allows suit when a special needs trust is already in place and State legislation conflicts with federal Medicaid laws.  Lewis involved the Supremacy Clause and a suit against individuals acting under color of State law.  There are no such issues in this case.

Plaintiffs additional arguments regarding the Department of Justice's proposal to use a reversionary trust rather than a special needs trust are without merit.  Plaintiffs' argument, that the policy of the Department of Justice is discriminatory because it only settles cases that use reversionary trust, is premature.  The Court agrees with the Magistrate Judge that "[t]he merits of a reversionary trust as compared to a special needs trust are not appropriately before the Court."  (Findings and Recommendation at p. 13, ECF No. 131).

The Magistrate Judge properly determined that the Plaintiffs were free to reject the offers of settlement made by the Defendant and the "Plaintiffs' attempt to use the new offers of settlement to demonstrate Defendant's lack of good faith in disapproving the original proposed settlement is unpersuasive and

unsupported by any authority." (<u>Id.</u>)

The reasons stated in the Magistrate Judge's Findings and Recommendation are sound.

Plaintiffs' Objections (ECF No. 138) are **DENIED**.

The Findings and Recommendation to Deny Plaintiffs' Motion to Enforce Settlement (ECF No. 131) is **ADOPTED**.

## CONCLUSION

Plaintiffs' Objections to Magistrate Judge's Findings and Recommendation to Deny Plaintiffs' Motion to Enforce Settlement (ECF No. 138) are **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Local Rule 74.2, the "Findings and Recommendation to Deny Plaintiffs' Motion to Enforce Settlement" (ECF No. 131) is **ADOPTED AS THE OPINION AND ORDER OF THIS COURT**.

IT IS SO ORDERED.

DATED: May 27, 2015, Honolulu, Hawaii.



_/s/ Helen Gillmor_____

Helen Gillmor
United States District Judge

<u>Laura M. Whitney and Richard Whitney, Individually and as Next Friends of Their Minor Sons E.W. and N.W. v. United States of America</u>, Civ. No. 12-00382 HG-RLP; **ORDER DENYING PLAINTIFFS' OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION TO DENY PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT (ECF No. 138) and ADOPTING THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION TO DENY PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT (ECF No. 131)**